E-FILED
Friday, 13 November, 2026 02:26:16 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| NICO GAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25-CV-04193-SLD-RLH |
| | ) | |
| CITY OF ROCK ISLAND, ADAM BRADLEY, | ) | |
| BRIEANNE LONERGAN, ANDREW LAWLER, | ) | |
| THOMAS DANHOF, AND BRIAN KOZAK, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT PURSUANT TO RULE 12(b)(6)**

COMES NOW, Defendants, CITY OF ROCK ISLAND, and the individually named officers, by and through counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move to dismiss Plaintiff's Second Amended Complaint in its entirety. In support thereof, Defendants state as follows.

## MEMORANDUM OF LAW

## I. INTRODUCTION

This case arises from Plaintiff's arrest at The Gathering on October 29, 2023, and the criminal proceedings that followed. In its September 30, 2026, Order, the Court dismissed Plaintiff's Amended Complaint, finding that the facts alleged established probable cause for the arrest but that Plaintiff had not adequately pleaded the remaining elements of his federal claims. The Court gave Plaintiff an opportunity to amend. Doc. #24.

Plaintiff has now filed a Second Amended Complaint ("SAC"), adding allegations about The Gathering's prior operation as an event hall, its recent liquor license, and what the individual

officers allegedly knew. Doc. #25. He also adds allegations concerning Kozak's involvement in the criminal proceedings and the City's training practices. Defendants have considered those additional allegations, but they do not change the result. The facts still establish probable cause for the arrest. The SAC also fails to allege that either prosecution resulted in a separate seizure, that the other officers caused the charging decisions, or that a City policy or failure to train caused a constitutional violation. Doc. #25 ¶¶ 7–12, 34, 40, 72–124. For these reasons, Defendants request dismissal of Counts I through IV with prejudice. Count V seeks indemnification and cannot stand if no underlying claim remains against an individual officer.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. To survive dismissal, a plaintiff must plead facts sufficient to state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The Court accepts well-pleaded allegations as true and draws reasonable inferences in Plaintiff's favor, but need not accept legal conclusions or formulaic recitations of the elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The Court also construes the pro se complaint liberally. (Doc. #24 at 9–10, 20.) A complaint may nevertheless be dismissed when its own allegations establish a complete defense. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

## III. STATEMENT OF FACTS

1. Plaintiff, Nico Gay, filed this action on October 29, 2025. Doc. #1. On September 30, 2026, the Court granted Defendants' motion to dismiss the Amended Complaint and allowed Plaintiff to file a Second Amended Complaint by October 30, 2026, if he could cure the identified deficiencies. Doc. #24 at 22. Plaintiff filed the SAC on October 30, 2026. Doc. #25.

2. The Gathering is located across Second Avenue from Arts Alley. *Id.* ¶ 6.
3. The SAC adds allegations about The Gathering's prior operations. Plaintiff alleges that Kenneth Allen operated the establishment as an event hall without serving alcohol for approximately sixteen to seventeen months before obtaining an ordinary liquor license on September 25, 2023. *Id.* ¶ 7.
4. Plaintiff also alleges that Bradley and Lonergan had responded to a separate shooting near The Gathering in April 2023. Bradley reviewed surveillance footage and prepared a report concerning that incident. *Id.* ¶¶ 8–9.
5. According to the SAC, Lieutenant Morris knew about The Gathering's prior operations and contacted Allen about preparations for licensed operations before October 29, 2023. Plaintiff alleges that October 28–29 was the establishment's first public opening for licensed alcohol service. *Id.* ¶¶ 10–11.
6. Plaintiff alleges that the statutory three-month period included the establishment's earlier event-hall operations. He also acknowledges that the records identified in the SAC do not establish the amount or composition of its gross receipts. *Id.* ¶ 12.
7. At approximately 2:02 a.m. on October 29, 2023, shots were fired in Arts Alley. Witnesses told Lawler that a man in a yellow jacket had displayed a firearm and entered The Gathering. One witness reported that the man drew the firearm after hearing shots. *Id.* ¶¶ 13–14.
8. The witnesses could not identify who fired the shots and described individuals wearing white and yellow hoodies. Plaintiff was wearing a navy-blue, yellow, and white jacket. *Id.* ¶¶ 15–16.

9. When officers approached The Gathering, they encountered a locked entrance. Lonergan told Lawler that the establishment had a liquor license. Plaintiff alleges that no standardized firearm-prohibition sign was visible and that neither Allen nor the staff warned him against carrying a firearm inside. *Id.* ¶¶ 17–20.
10. Lawler stopped Plaintiff near the rear exit and handcuffed him. Allen told Lawler that Plaintiff was "supposed to be here." Lonergan confirmed that Plaintiff had an active FOID card and concealed carry license. *Id.* ¶¶ 20–23; 27-29.
11. Bradley reviewed civilian video footage and circulated a still depicting Plaintiff holding a firearm pointed downward across the street from Arts Alley. Bradley showed the still to Danhof. Lawler and Lonergan later reviewed the image and recognized Plaintiff. *Id.* ¶¶ 21, 25, 30, 38–39.
12. Allen told Bradley and Danhof that The Gathering had closed, that Plaintiff was licensed to carry, and that Plaintiff was not involved in the shooting. *Id.* ¶¶ 31–32.
13. The SAC adds further detail about statements made before the arrest concerning the establishment's recent licensing. At approximately 2:14 a.m., Sanchez-Poata told Officer Ronk that it was like The Gathering's first day open. *Id.* ¶ 34.
14. At approximately 2:22:50 a.m., Allen told Danhof that he had just obtained his liquor license after trying for several years. *Id.* ¶ 40. The SAC does not allege that either statement was communicated to Lawler before the arrest. *Id.* ¶¶ 34, 40–45.
15. At approximately 2:24:37 a.m., Lawler announced that Plaintiff was under arrest. *Id.* ¶¶ 43–44.
16. Officers continued investigating the shooting after the arrest. Danhof interviewed a witness who could not identify the shooter's face, but later told Lawler and Bradley that

the witness had identified Plaintiff as the person involved in the shooting. Plaintiff alleges that Danhof overstated the witness's identification. *Id.* ¶¶ 46-48.

17. Bradley instructed Lonergan to proceed with aggravated discharge if Plaintiff declined to speak with a detective. Plaintiff declined and was taken for processing. *Id.* ¶¶ 48, 50.

18. Kozak joined the investigation after the arrest, reviewed additional footage, and informed Plaintiff that he would be cited for possession of a firearm in a prohibited place. Plaintiff was released on a Notice to Appear citing 430 ILCS 66/65(a)(11). *Id.* ¶¶ 52–58.

19. On November 6, 2023, an Information was prepared alleging that The Gathering derived more than half of its gross receipts during the preceding three months from alcohol sales, in violation of § 65(a)(9). Cichon drafted the Information, and Kozak signed a sworn affidavit attesting to its allegations. *Id.* ¶ 65.

20. The following day, Allen testified at the liquor-license hearing concerning The Gathering's prior operations and its first public opening for licensed alcohol service. Plaintiff alleges that Kozak was aware of Allen's testimony. *Id.* ¶¶ 59, 103.

21. The SAC alleges that the statutory three-month period included the establishment's earlier event-hall operations and that the available records did not establish the amount or composition of its gross receipts. *Id.* ¶¶ 12, 103–105.

22. The first prosecution was dismissed with leave to reinstate on July 16, 2024. The Assistant State's Attorney subsequently told Kozak that the State could not determine whether The Gathering derived sufficient revenue from alcohol sales. *Id.* ¶ 66,

23. Kozak then contacted the City Clerk, who provided the liquor license and information that The Gathering had been open for only one day at the time of the incident. Kozak documented the communications in a supplemental report dated July 28, 2024. *Id.* ¶ 66.

24. The State refiled the charge on July 31, 2024. The renewed prosecution was dismissed without leave to reinstate on June 3, 2025. *Id.* ¶¶ 67, 69, 107.

## IV. ARGUMENT

### A. Count I Fails Because the Pleaded Facts Establish Probable Cause

To state a Fourth Amendment false-arrest claim, Plaintiff must plausibly allege that the arrest lacked probable cause. *Braun v. Village of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022). Probable cause exists when the facts and circumstances known to the officer would warrant a prudent person in believing the suspect committed an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The Court considers the facts together and asks whether they establish a fair probability, a standard below proof by a preponderance of the evidence. *District of Columbia v. Wesby*, 583 U.S. 48, 57, 61 (2018). An arrest is lawful if the facts known at the time establish probable cause for an offense, even if the officer gives a different reason for the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153–55 (2004). On that basis, this Court held that probable cause under 430 ILCS 66/65(a)(9) defeated Count I without deciding whether the officers also had probable cause for aggravated discharge. Doc. #24 at 12–14.

#### *1. The amended allegations do not defeat probable cause under § 65(a)(9).*

The Court previously found probable cause to arrest Plaintiff under 430 ILCS 66/65(a)(9). In reaching that conclusion, it considered the absence of a firearm-prohibition sign, the officers' failure to review the establishment's receipts, and Allen's statement that he had just obtained a liquor license. Doc. #24 at 3, 12–13. The Court nevertheless found probable cause based on the reports of an armed man entering a business described as a bar, the officers' corroboration of Plaintiff's possession of a firearm, and confirmation that The Gathering held a liquor license. *Id*. at 12–14.

The SAC adds details about The Gathering's prior operations and the officers' familiarity with the business. Plaintiff alleges that Allen operated it as an event hall without alcohol service for approximately sixteen to seventeen months, that Bradley and Lonergan had responded to a separate shooting near the establishment in April 2023, and that Lieutenant Morris knew about its prior operations and contacted Allen about preparations for licensed service. Doc. #25 ¶¶ 7–10. The SAC further alleges that the City issued an ordinary liquor license on September 25, 2023, and that October 28–29 was the establishment's first public opening for licensed alcohol service. *Id.* ¶ 11. These allegations may establish that some officers knew about the establishment's transition to licensed operations. They do not establish that alcohol sales accounted for less than half of its gross receipts during the statutory three-month period. The SAC does not identify records establishing the amount or composition of those receipts. *Id.* ¶ 12. The question at this stage is whether the circumstances known to the officers provided an objectively reasonable basis to believe the statutory requirements were satisfied, not whether the State could ultimately prove them.

Plaintiff also alleges that Lonergan told Lawler the establishment had a liquor license "now," that Sanchez-Poata told Ronk the event was like the venue's first day open, and that Allen told Danhof he had just obtained his license. *Id.* ¶¶ 17, 34, 40. The SAC does not allege that Ronk or Danhof communicated those statements to Lawler before he announced the arrest. In any event, knowing when a license was issued or when an establishment first opened to the public does not establish its gross receipts during the preceding three months. These additional allegations therefore do not establish that the officers knew the statutory threshold was unmet.

The Court's reliance on *People v. Lyke*, 2021 IL App (1st) 170371-U, ¶¶ 32–33, remains relevant. The Court cited *Lyke* in rejecting the argument that officers needed to obtain financial

records before making an arrest. Doc. #24 at 13–14. The SAC adds detail about The Gathering's history, but does not identify financial information showing that the statutory receipts threshold was not met or that Lawler knew it was not met.

2. *The allegations about notice and knowledge do not require a different result.*

Plaintiff alleges that he understood The Gathering to be an event hall, saw no firearm-prohibition sign, and received no warning that the premises qualified as a prohibited location. (Doc. #25 ¶¶ 18, 75, 88.) Those allegations bear on whether Plaintiff knew the factual circumstances that made the establishment a prohibited premises. They do not, however, establish that the officers lacked probable cause. Illinois law distinguishes knowledge of the facts constituting an offense from knowledge that those facts violate the law. 720 ILCS 5/4-3(b), (c), 4-5(a). Here, witnesses described The Gathering as a bar, reported that Plaintiff entered carrying a firearm, and officers corroborated his possession of the firearm. Doc. #25 ¶¶ 14–17, 19–23. The Court also previously considered the absence of signage and nevertheless found probable cause. Doc. #24 at 3, 12–14. Plaintiff's allegations about his own understanding do not change that determination.

3. *The initial detention and subsequent arrest must be evaluated separately.*

The SAC describes an initial detention while officers investigated the October shooting, followed by Lawler's announcement that Plaintiff was under arrest. When officers encountered Plaintiff near the rear exit, they were responding to reports that an armed individual had displayed a firearm and entered The Gathering shortly after shots were fired. Witnesses had described the individual's clothing, and Plaintiff was wearing a jacket with yellow and white markings. Officers had reason to determine whether Plaintiff was the person described by the

witnesses. Doc. #25 ¶¶ 14–16, 21–23. The Court's prior probable-cause ruling addressed the arrest under § 65(a)(9). Doc. #24 at 12–14.

The initial stop was an investigative detention, not necessarily an arrest simply because officers used handcuffs and placed Plaintiff in a squad car. Whether the detention became an arrest depends on whether the restraint was reasonable under the circumstances and whether officers diligently pursued their investigation. *Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Stewart*, 388 F.3d 1079, 1084–85 (7th Cir. 2004); *United States v. Bullock*, 632 F.3d 1004, 1015–16 (7th Cir. 2011). The SAC places approximately sixteen minutes between the initial detention and Lawler's announcement of the arrest. During that time, officers continued investigating the reported incident and reviewing the available information. Doc. #25 ¶¶ 21–23, 26–30, 38–45. Even if the Court finds that the detention became an arrest before Lawler formally announced it, the probable-cause basis under § 65(a)(9), discussed above, still applies.

Plaintiff also relies on evidence questioning his involvement in the shooting, including descriptions of a white coat or hoodie, video showing him across the street holding a firearm pointed downward, and Kozak's later assessment that Plaintiff was not involved. *Id.* ¶¶ 14–16, 26–30, 38–39, 56. That evidence concerns whether Plaintiff fired a weapon. It does not contradict the allegation that he entered The Gathering carrying one. The same is true of Danhof's later communication about the witness identification and Bradley's instruction concerning aggravated discharge. Both occurred after Lawler announced the arrest. *Id.* ¶¶ 43–50. Neither changes what Lawler knew when he made the arrest decision. Plaintiff's eventual release on a Notice to Appear under § 65(a)(11) likewise does not eliminate the separate probable-cause basis under § 65(a)(9). Doc. #25 ¶¶ 52–58. The Court has already recognized that probable cause for one offense defeats a false-arrest claim even if the officer cited a different offense. (Doc. #24

at 14 (citing *Ramos v. City of Chicago*, 716 F.3d 1013, 1018 (7th Cir. 2013)); see also *Devenpeck v. Alford*, 543 U.S. 146, 153–55 (2004)).

*4. The SAC does not establish personal responsibility for the arrest as to each officer.*

Section 1983 requires personal responsibility for the alleged constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The SAC describes the officers' involvement at different stages of the investigation. Lawler and Lonergan encountered Plaintiff and participated in the initial detention. Doc. #25 ¶¶ 20–23. Bradley reviewed and circulated the video still, which other officers later reviewed. *Id.* ¶¶ 26–30, 38–39. Danhof interviewed witnesses and communicated information to the other officers, while Kozak became involved in the investigation after the arrest. *Id.* ¶¶ 40–50, 52–58. These allegations describe participation in the investigation, but do not establish that any officer violated Plaintiff's Fourth Amendment rights. Because the SAC does not plausibly allege an underlying constitutional violation, the claims against the individual officers fail.

**B. Count II Fails to State a Fourth Amendment Malicious-Prosecution Claim**

*1. Neither prosecution is alleged to have caused a seizure of Plaintiff.*

A Fourth Amendment malicious-prosecution claim requires a seizure resulting from the allegedly wrongful prosecution. *Thompson v. Clark*, 596 U.S. 36, 42–43 & n.2 (2022); see *Manuel v. City of Joliet*, 580 U.S. 357, 370–72 (2017). This Court reserved that issue when dismissing the prior complaint. Doc. #24 at 15 n.7. In *Neita v. City of Chicago*, 148 F.4th 916, 939–40 (7th Cir. 2025), the Seventh Circuit affirmed dismissal where the plaintiff alleged an arrest, criminal charges, bond, and court appearances but did not plausibly allege that he was detained as a result of legal process.

The same deficiency exists here. Plaintiff was arrested and held on October 29, but was released on a Notice to Appear. Doc. #25 ¶¶ 50, 52–58. The November 6 Information was filed after his release. The SAC does not allege that the Information resulted in renewed custody or any additional restraint on his liberty. *Id.* ¶¶ 65–66. The same problem applies to the July 2024 refiling. Although Plaintiff alleges that the prosecution continued, he does not identify any arrest, detention, or release condition resulting from that proceeding. *Id.* ¶¶ 67–70, 89–107.

Plaintiff's general allegation that he suffered a loss of liberty does not identify a seizure resulting from either prosecution. *Id.* ¶ 70. Nor does the firearm-return order identified in Exhibit E3 establish a seizure of Plaintiff himself; it concerns the retention of his property. *Id.*, Ex. E3. The October arrest preceded both charging decisions. Without an additional restraint attributable to either prosecution, Count II fails to satisfy the Fourth Amendment seizure requirement, even if Plaintiff adequately alleges that an officer contributed to a charge.

Count II expressly asserts malicious prosecution under the Fourth Amendment. Although paragraph 3 generally references the Fourteenth Amendment, the SAC does not identify a separate due-process deprivation. *Id.* ¶ 3. To the extent Plaintiff intends to assert a separate substantive due-process claim based on the same alleged prosecution, that claim also fails. The Seventh Circuit has held that an adequate state-law remedy for malicious prosecution precludes a separate federal due-process claim based on the same conduct. *Newsome v. McCabe*, 256 F.3d 747, 750–51 (7th Cir. 2001). This Court previously recognized that Illinois provides such a remedy. Doc. #24 at 16 n.8.

*2. The two charging decisions require separate probable-cause analyses.*

Unlike false arrest, malicious prosecution is assessed charge by charge. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 561–63 (2024). The October Notice to Appear cited § 65(a)(11).

Doc. #25 ¶ 58. The November Information charged § 65(a)(9), based on the allegation that The Gathering derived more than half of its gross receipts during the preceding three months from alcohol sales. *Id.* ¶ 65. Count II identifies both the November and July proceedings as the basis for its malicious-prosecution claim. *Id.* 89, 113. The Court's prior probable-cause ruling informs the analysis, but does not resolve what investigators and prosecutors knew when the November Information was prepared or when the State refiled in July 2024.

On November 6, ASA Cichon drafted the Information, and Kozak signed a sworn affidavit attesting to its allegations. *Id.* ¶ 65. The evidence supporting the charge included witness accounts of an armed individual entering The Gathering, the officers' identification of Plaintiff in the video, and information that the establishment held a liquor license. *Id.* ¶¶ 14–25, 38–40, 65. Allen did not testify about the venue's prior operations until the following day, November 7. *Id.* ¶¶ 59, 103. That testimony could not have influenced the information available to Kozak when he signed the Information. The timing is addressed further below in connection with Plaintiff's allegations of malice.

The circumstances surrounding the July refiling were different. Plaintiff alleges that the State had identified a problem establishing the alcohol receipts and that Kozak knew about Allen's testimony concerning the venue's prior operations. *Id.* ¶¶ 59, 65–69, 103–105. Kozak's supplemental report documented the ordinary liquor license, its recent issuance, and the information that the business had been open for only one day when the incident occurred. *Id.* ¶¶ 66–69, 104. The State's inability to establish the precise receipts percentage does not, by itself, establish that probable cause was absent. Probable cause requires only a reasonable probability of criminal activity, not proof sufficient to establish guilt beyond a reasonable doubt. *See District*

*of Columbia v. Wesby*, 583 U.S. 48, 57, 61 (2018); *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743–44 (7th Cir. 2003).

*3. The SAC does not plausibly connect the other officers to either filing.*

An officer may cause a prosecution by playing a significant role in commencing or continuing it. A prosecutor's decision does not insulate an officer who deliberately supplied misleading information that influenced the decision. *Beaman v. Freesmeyer*, 131 N.E.3d 488, 499–500 (Ill. 2019); *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988). This Court previously found that the Amended Complaint did not plausibly connect Lawler, Lonergan, Danhof, or Bradley to either prosecution. Doc. #24 at 16–18. The SAC adds allegations identifying information allegedly omitted from the officers' reports and communications with Kozak. Doc. #25 ¶¶ 92–100, 106. Those additions still do not adequately connect any particular omission to either charging decision.

Plaintiff alleges that Lawler, Lonergan, and Danhof omitted information concerning the recent liquor license from their reports. *Id.* ¶¶ 92–94. He further alleges that Kozak reviewed the investigative file and consulted the ASA on November 2, and that Bradley personally briefed Kozak about the shooting investigation. *Id.* ¶¶ 96–97, 100. But the SAC does not identify what Kozak communicated to the ASA about the establishment's licensing history or receipts, or what information the ASA relied upon in preparing the November Information. Plaintiff acknowledges that the December 5 disclosure establishes prosecutorial access to the materials by that date, not what the ASA reviewed before November 6. *Id.* ¶¶ 98–99. Bradley's alleged briefing concerned the shooting and the video, not the establishment's receipts or licensing history. *Id.* ¶¶ 95–96, 100.

The SAC also identifies no comparable participation by these four officers in the July refiling, which Plaintiff attributes to Kozak's supplemental report. *Id.* ¶¶ 103–106. Although Plaintiff alleges that the officers' omissions contributed to the prosecutions, the factual allegations do not adequately explain how any particular officer caused either charging decision. The SAC acknowledges that prosecutors retained charging discretion. *Id.* ¶ 104. The claims against Lawler, Lonergan, Danhof, and Bradley should therefore be dismissed.

*4. Kozak's alleged role in each case does not plausibly establish malice.*

The SAC alleges that ASA Cichon drafted the November Information and that Kozak swore to its allegations, including the receipts threshold. Doc. #25 ¶ 65. Swearing to an Information drafted by the prosecutor does not, by itself, establish that Kozak knowingly made a false statement or acted recklessly. Plaintiff identifies no receipts information known to Kozak at the time that contradicted the allegation. More importantly, Allen's testimony concerning the venue's prior operations occurred at the November 7 hearing, one day after Kozak signed the Information. *Id.* ¶¶ 59, 65, 103. That testimony could not have influenced what Kozak knew when he signed the Information on November 6. The Court has already held that a failure to investigate further, without more, does not establish malice. Doc. #24 at 18–19.

Plaintiff also acknowledges that Kozak's oath establishes his adoption of the allegation, but does not by itself establish that he knowingly swore falsely. Doc. #25 ¶¶ 97, 103–105. *Rainsberger v. Benner*, 913 F.3d 640, 647–52 (7th Cir. 2019), illustrates the distinction. There, the officer conceded that he knowingly or recklessly misled the judicial officer. The SAC alleges no comparable facts showing that Kozak knew the receipts allegation was false or disregarded contrary information when he signed.

The July refiling presents a different allegation. The Court previously found that Kozak's supplemental report plausibly contributed to the decision to refile. Doc. #24 at 18–20. Plaintiff now alleges that Kozak was aware of Allen's testimony concerning The Gathering's prior operation as an event hall without alcohol service and faults him for omitting that information from his July report. Doc. #25 ¶¶ 59, 103–105. Defendants dispute Plaintiff's characterization of what Kozak heard, but even accepting the allegation for purposes of this motion, it does not establish malice. The supplemental report disclosed the recently issued ordinary liquor license and that the establishment had been open for only one day when the incident occurred. *Id.* ¶¶ 66–69, 104. Kozak did not claim that financial records established the statutory receipts percentage, and the SAC does not allege that he supplied false financial information or pressured the prosecutor to refile. The omission of Allen's testimony bears on what Kozak knew, but does not, without additional facts, establish that he intended to mislead the prosecutor or pursue an improper purpose. Plaintiff's allegations about Kozak's conversations with his mother concerning Nekai do not supply that missing connection. *Id.* ¶¶ 57, 101–105.

**C. Count III Fails to State a Claim for Municipal Liability**

This Court dismissed Count III because the prior complaint did not plausibly allege an underlying constitutional violation. Doc. #24 at 21–22. If the Court again finds no underlying violation, Count III fails on that ground. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam). The City separately moves to dismiss Count III on independent grounds because Plaintiff has not plausibly alleged a municipal policy, custom, or deliberately indifferent omission that caused the alleged injury. *Monell v. Department of Social Services*, 436 U.S. 658, 690–94 (1978); *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 303 (7th Cir. 2010).

1. *The pleaded events do not show a widespread practice or a policymaker's decision.*

The SAC alleges that the City maintained a practice of treating an ordinary liquor license or a business's description as a bar as sufficient to establish a prohibited premises. Plaintiff relies on Lonergan's question about carrying a firearm in a bar, Lawler's report, Kozak's characterization of The Gathering, and the City's subsequent actions involving the same incident. Doc. #25 ¶¶ 109–111. But the April nuisance action concerned a separate shooting, not another arrest or enforcement decision under § 65(a)(9). *Id.* ¶ 10; Ex. B5.

The remaining events all arose from the October 29 incident. They include the October nuisance notice, the November memorandum and administrative hearing, the licensing order, later City correspondence, and the criminal proceedings. *Id.* ¶¶ 59–69, 113–114. Repeated administrative and criminal proceedings arising from one incident do not establish a widespread practice. Nor does the SAC identify a policymaker who directed officers to disregard the statutory receipts requirement. In fact, the November memorandum approved by Chief Landi expressly recited the 50% receipts condition. *Id.* ¶¶ 64, 111.

Plaintiff acknowledges that these later proceedings are "circumstantial evidence of the alleged practice, not independent incidents proving a pattern." He also acknowledges that the later documents did not retroactively cause the October 29 arrest. *Id.* ¶ 115. The allegations therefore do not establish a widespread municipal practice or a policymaker's decision that caused the alleged constitutional violation. *See Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 303 (7th Cir. 2010); *McCauley v. City of Chicago*, 671 F.3d 611, 616–18 (7th Cir. 2011).

2. *The facts do not support deliberate indifference or a causal connection to the custody.*

A failure to train supports municipal liability only when the need for additional instruction is so obvious that the failure to provide it amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 61–64 (2011). Although a pattern of similar violations is ordinarily required, the SAC identifies no prior incident, complaint, or warning that would have put City policymakers on notice that officers were improperly applying § 65(a)(9). Plaintiff argues that officers regularly encounter concealed-carry licensees at businesses serving alcohol, but that alone does not establish a known risk of unconstitutional arrests. Doc. #25 ¶¶ 109–111. Unlike *Flores v. City of South Bend*, 997 F.3d 725, 731–34 (7th Cir. 2021), the SAC alleges no history of similar misconduct that the City knew about and failed to address.

The February 2026 FOIA response does not fill that gap. The City reported no records responsive to Plaintiff's request for training materials concerning § 65(a)(9), but Plaintiff acknowledges that this does not establish that no training occurred. Doc. #25 ¶ 112; Ex. F1. Nor does it establish what training was provided in October 2023 or that a policymaker deliberately chose not to provide necessary instruction.

Finally, the SAC does not connect any identified training or supervisory deficiency to Plaintiff's arrest or continued detention. The later proceedings and involvement of senior City officials all arose from the same incident and do not establish that the City knew of a training deficiency before the arrest. Doc. #25 ¶¶ 113–115. A municipality must be the moving force behind the alleged constitutional violation. *Board of County Commissioners v. Brown*, 520 U.S. 397, 404–05 (1997). Count III should therefore be dismissed even if an individual claim is allowed to proceed.

**D. Count IV Fails to State a Claim for Failure to Intervene**

An officer may be liable for failing to intervene if the officer knew or had reason to know another officer was committing a constitutional violation and had a realistic opportunity to prevent it. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). This Court previously dismissed Count IV because the Amended Complaint did not allege an underlying constitutional violation. Doc. #24 at 20. The SAC does not cure that deficiency. Even if the Court allows an underlying claim to proceed, Plaintiff must still allege facts showing that each officer knew of the violation and had an opportunity to stop it.

The allegations concerning Lonergan and Bradley do not meet that standard. Plaintiff claims Lonergan could have shared additional information about the conflicting witness description and the recent liquor license, and that Bradley could have explained the limitations of the video and reconsidered his later instruction concerning aggravated discharge. Doc. #25 ¶¶ 117–118. Those allegations principally concern Plaintiff's involvement in the shooting. They do not establish that either officer knew the detention was unconstitutional based on the separate prohibited-premises allegation. Knowledge that the liquor license was recently issued does not, by itself, establish knowledge that the statutory receipts requirement was not met.

The allegations concerning Danhof, Lawler, and Kozak also fail to establish a realistic opportunity to intervene. Danhof's communication about the witness identification occurred after the arrest. Although Plaintiff alleges that Danhof could have corrected the identification, the SAC does not establish when he learned that another officer was violating Plaintiff's rights or whether he had a realistic opportunity to prevent the continued detention. *Id.* ¶¶ 46–49, 86, 119. Lawler's arrest decision is addressed in Count I. His later participation in discussions about Plaintiff's custody does not establish that he knew another officer was committing a

constitutional violation and could have stopped it. *Id.* ¶¶ 45, 51, 120. Finally, Kozak joined the investigation after the arrest, reviewed additional evidence, and ultimately released Plaintiff on a Notice to Appear. The SAC identifies no period during which Kozak knew another officer was unlawfully detaining Plaintiff and had an opportunity to intervene. *Id.* ¶¶ 52–58, 120–121. Count IV should therefore be dismissed.

**E. Count V Fails Without a Claim That Can Support Indemnification**

Count V seeks indemnification under 745 ILCS 10/9-102 for a qualifying compensatory judgment against an officer for acts within the scope of employment. As this Court held on the prior motion, if all underlying claims against the individual Defendants are dismissed, no claim remains that can support indemnification. In that event, Count V should be dismissed without prejudice. Doc. #24 at 22; Doc. #25 ¶¶ 122–124.

**F. Qualified Immunity Provides an Alternative Basis for Dismissal.**

Qualified immunity protects officers unless their conduct violated a constitutional right that was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Even if actual probable cause was lacking, an officer is entitled to immunity if a reasonable officer could have believed probable cause existed. *Abbott v. Sangamon County*, 705 F.3d 706, 714–15 (7th Cir. 2013). The law must have placed the unlawfulness of the specific conduct beyond debate. *District of Columbia v. Wesby*, 583 U.S. 48, 63–68 (2018).

The SAC does not identify clearly established law that would have put the officers on notice that their conduct under these circumstances violated Plaintiff's rights. The allegations concerning Lawler and Lonergan involve an investigation supported by witness reports, video, and information concerning The Gathering's liquor license. Bradley and Danhof participated in the shooting investigation and subsequent communications, but the SAC does not identify clearly

established law prohibiting their particular conduct. Doc. #25 ¶¶ 14–50. Nor does Plaintiff identify clearly established law that would have put Kozak on notice that his participation in the subsequent charging decisions, including the November Information and July supplemental report, violated Plaintiff's constitutional rights. *Id.* ¶¶ 52–69. The individual officers are therefore entitled to qualified immunity.

### G. The Court Should Decline Jurisdiction or Dismiss, Any State-Law Claim

The Court previously dismissed any state-law claims for false arrest, false imprisonment, malicious prosecution, and negligence without prejudice and declined supplemental jurisdiction. Doc. #24 at 20–21. The SAC pleads no state-law tort count, although it invokes supplemental jurisdiction and is captioned as seeking "Related State-Law Relief." Doc. #25 ¶ 3. If the Court construes the SAC to reassert any such claim, the same reasoning applies: the case remains at the pleading stage, no federal claim survives, and § 1367(c)(3) favors relinquishing jurisdiction. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).

Alternatively, any state-law false-arrest or false-imprisonment claim arising from the October 29, 2023 arrest and detention is barred by the one-year limitations period under 745 ILCS 10/8-101(a). Plaintiff filed this action on October 29, 2025. Doc. #1.

### H. Counts I Through IV Should Be Dismissed With Prejudice

The Court previously identified the deficiencies in Plaintiff's claims and gave him an opportunity to cure them. Doc. #24 at 22. Plaintiff has now amended his complaint to add detail concerning the officers' knowledge, the charging decisions, and the City's training practices. Those allegations have been considered throughout this motion, but they do not cure the deficiencies identified in the prior Order. The SAC still fails to establish a seizure resulting from either prosecution, plausibly connect the other officers' conduct to the charging decisions, or

identify a City policy or deliberately indifferent failure to train that caused a constitutional violation. Plaintiff has already been given an opportunity to address these deficiencies, and the additional allegations do not suggest that another amendment would produce a different result. Further amendment would therefore be futile. Defendants request dismissal of Counts I through IV with prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015).

## V. CONCLUSION

WHEREFORE, Defendants, CITY OF ROCK ISLAND, and the individually named officers, respectfully request that the Court grant their motion under Rule 12(b)(6), dismiss Counts I, II, III, and IV with prejudice, and dismiss Count V without prejudice if no underlying claim against an individual Defendant that could support indemnification remains, and decline supplemental jurisdiction over any remaining state-law claim. Alternatively, if the Court allows any portion of an individual claim to proceed, Defendants request dismissal of the claims against any officer for whom the SAC fails to allege personal participation or a plausible basis for liability.

Respectfully submitted,

CITY OF ROCK ISLAND, ADAM BRADLEY, BRIEANNE LONERGAN, ANDREW LAWLER, THOMAS DANHOF, AND BRIAN KOZAK

By: ___/s/ Leslie M. Day______
Leslie M. Day ARDC #6308552
City Attorney, City of Rock Island
Attorney for Defendants
1528 3rd Avenue
Rock Island, IL 61201
Phone: (309) 732-2007
Email: day.leslie@rigov.org

**CERTIFICATE OF COMPLIANCE**

Pursuant to Central District of Illinois Local Rule 7.1(B)(4), the undersigned certifies that this memorandum contains 6,281 words including headings and quotations, and complies with the 7,000-word limitation.

By: ___/s/ Leslie M. Day______
Leslie M. Day ARDC #6308552
City Attorney, City of Rock Island
Attorney for Defendants
1528 3rd Avenue
Rock Island, IL 61201
Phone: (309) 732-2007
Email: day.leslie@rigov.org

**PROOF OF SERVICE**

I hereby certify that on November 13, 2026, I electronically filed the foregoing with the Clerk of the Court and served a copy on the following by mail and email to:

Nico Gay
1841 13th Street
Moline, IL 61265
nico.gay.ng1@gmail.com

By: ___/s/ Leslie M. Day______
Leslie M. Day ARDC #6308552
City Attorney, City of Rock Island
Attorney for Defendants
1528 3rd Avenue
Rock Island, IL 61201
Phone: (309) 732-2007
Email: day.leslie@rigov.org